165 Pa. 479; Davis v. Doylestown Borough, 3 Pa. C. C. R. 573 ; Com. v. Councils of Pittsburg, 41 Pa. 278; Millerstown Borough v. Frederick, 114 Pa. 435.

The borough of Columbia created debts for ordinary current expenditures and recognized them and paid the interest and is only now seeking to redeem them by issuing new ones, because of the cheapness of money.   It recognizes the debts and is willing to pay them and is now proceeding by election to procure popular approval, and no question is raised as to the propriety of the proceeding under the act of assembly.   It did not before ask for popular approval as it should have done, but it is asking for it now.   The liability of the borough for the debts is admitted in the answer and a popular election may now be had to authorize and approve the issuing of bonds, and this could be done if none had been issued, and their issue may be authorized, approved and now ratified.


No appearance or paper-book for appellee.


PER CURIAM, May 31, 1899 :

We find no error in the decree from which this appeal was taken.   The decree is affirmed on the opinion of the learned president of the court below, and appeal dismissed at appellant's costs.

---

## Commonwealth *v.* Ralph W. Wireback.

*Criminal law—Lunacy—Act of May* 8, 1883, *P. L.* 21—*Mandamus.*

The Supreme Court will not by mandamus order the judges of the court of oyer and terminer to issue a commission in lunacy to examine as to the mental condition of a prisoner convicted of murder in the first degree and awaiting sentence of death.


Petition for mandamus.   In the Supreme Court of Pennsylvania.

Ralph W. Wireback was convicted in the court of oyer and terminer of Lancaster county on August 24, 1898, of murder of

the first degree.    See Com. v. Wireback, 190 Pa. 138.    The day of execution has been fixed by the governor for June 7, 1899.

The petition of C. E. Montgomery, Esq., and John M. Groff, Esq., counsel for the prisoner, averred that the prisoner had been examined since his conviction, and nine physicians had pronounced him insane; that application had been made to the board of pardons, but that the board had refused to appoint a commission to inquire into the prisoner's insanity; that an application had been made to the court of oyer and terminer for the appointment of a commissioner, and that this application had been refused.

The prayer of the present petition was that a mandamus should issue directing Hon. John B. Livingston, president judge, and Hon. Charles I. Landis, additional law judge of the court of oyer and terminer of Lancaster county, to order an inquiry into the circumstances of Ralph W. Wireback's insanity or condition requiring treatment in a hospital for the insane either by a commission or otherwise.

*C. E. Montgomery* and *John M. Groff*, for prisoner.—Counsel for defendant made application to the court of oyer and terminer of Lancaster county by petition, affirmed and subscribed to by Dr. D. Frank Kline, physician to the Lancaster county prison, which petition set forth that Ralph W. Wireback is insane, and was in such a condition as to require treatment in a hospital for the insane and prayed that an inquiry into the circumstances either by commission or otherwise, with notice to the committee on lunacy, be made under the provisions of the Act of Assembly of May 8, 1883, P. L. 21, sec. 29. Appended to this petition was the testimony of nine physicians, an underkeeper and a deathwatch to the effect that Ralph W. Wireback is at present insane and was taken under cross-examination by the commonwealth.    This petition, with the appended depositions, was presented to the said court of oyer and terminer of Lancaster county on May 22, 1899, and forthwith dismissed in a written opinion by said court, on the ground that the Act of May 8, 1883, P. L. 21, sec. 29, did not apply to convicted murderers under sentence of death.

Section 29, under which the aforesaid application was made, is as follows : " Section 29.    The provisions of this act in respect

of the admission or discharge of patients, shall not extend to insane criminals in custody.   Such persons shall not be received, except when delivered by a sheriff of the county or his deputy, together with an order of the court, of the county in which he was arrested or convicted, having jurisdiction of the offence, under the seal of the court and signed by a law judge.   Nor shall such criminals be discharged from a hospital or other place of detention for the insane, saving on a like order, and to the sheriff or his deputy producing such order, and while detained as an insane person, such criminal shall be so kept as to insure his detention until duly discharged.   Whenever any person detained in any gaol or prison is insane, or in such a condition as to require treatment in a hospital for the insane, it shall be the duty of any law judge of the court, under whose order the person is detained, upon application, to direct an inquiry into the circumstances, either by a commission or otherwise, as he shall deem proper, with notice to the committee on lunacy; and if the judge shall be satisfied that the person confined requires treatment in a hospital, he shall thereupon direct the removal of the said person from the gaol or prison to a state hospital, which order shall be executed by the sheriff of the county or his deputy, and the actual expenses of maintaining the person in the hospital, shall be paid by the county liable for the maintenance of the said person in the gaol or prison from which he is removed."

The act of May 8, 1883, in itself embodies a complete system of the admission or discharge of insane criminals in custody, and specifically states, " that whenever any person detained in any gaol or prison is insane, or in such condition as to require treatment in a hospital for the insane, it shall be the duty of any law judge of the court on whose order a person is detained upon application to direct an inquiry into the circumstances, either by a commission or otherwise, as he shall deem proper, with notice to the committee on lunacy."

Had it been the intention of the legislature to except criminals under sentence of death, from the operation of said act the exception would have been made in the act itself.   The act of 1874, P. L. 160, was intended as an improvement and correction of the imperfections in the act of 1869, P. L. 79, section 6 and section 4 of which act refer to the same subjects as section 1 of

the aforesaid act of 1874, and section 29 of the act of 1883, represents a completed, perfected and new method for determining the question of the insanity of any person detained in any gaol or prison. If the act of 1883 does not repeal the act of 1874 they give concurrent remedies and this application is in conformity with and made under the act of 1883.

Nine months have elapsed since the trial of Ralph W. Wireback. 2 Blackstone's Commentaries, book 4, chap. 2, pp. 345, 346, sec. * 25, among other things, says :

" If after he has been tried and found guilty, he loses his senses before judgment, judgment shall not be pronounced, and, if after judgment he becomes of non-sound memory, execution shall be stayed for per adventure says the commentator of the English law, had the prisoner been of sound memory he might have alleged something in stay of judgment or execution. When a madman is executed it is miserable specticale both against law and extreme in humanity and cruelty and can be no example to others."

Nine physicians, whose depositions are attached to this petition, an underkeeper and a deathwatch testified from repeated examinations that Ralph W. Wireback is insane at the present time. No physician or expert since the trial, has been called upon by the commonwealth to examine him or pronounce him insane. The board of pardons are holding defendant's application under advisement, until the commission, if appointed, shall report, which report they are ready and willing to consider. Said board suggested that no authority exists under any act of assembly in Pennsylvania, permitting it to appoint a commission as such or properly remunerate those composing it for their services, and that under the act of assembly of 1883, it was the duty of the court to inquire into the circumstances and appoint a commission.

The act of 1883, under which this application was made, so far as we can discover has not been passed upon by the Supreme Court of Pennsylvania. The act of 1874 was before the Supreme Court in the case of Ex parte John McGinnis, 14 W. N. C. 221, the only question on the subject passed by the Supreme Court. In this case, a commission of five physicians had been appointed by the governor to examine into the question of the person's sanity and the governor after carefully considering the

report of the commission declined to interfere. The Supreme Court said that it would establish a bad precedent, if we as a court of last resort, on the eve of the day fixed for execution interfere with the well-considered exercise of discretion by the governor. The court did not think the circumstances of the case or the act of assembly warranted an interference. The act of 1874 is discretionary while the act of 1883 is mandatory. There was, however, no denial of jurisdiction, nor that the act in question did not apply, nor that the authority could not have been exercised had the court so desired. In the case of Ralph W. Wireback no commission has ever been appointed to inquire into his sanity.

In the case of Ex parte Charles E. Briggs, an application under the act of 1874, the lower court did not construe and in no way passed upon or construed the act of 1883, and whether or not the act of 1883 repeals the act of 1874 it is a distinct, independent and complete method of procedure, and no lower court cases, which would construe the act of 1874 have the slightest application to or bearing upon the proper and legal construction of the act of 1883.

The case of Laros v. Commonwealth, 84 Pa. 200, cited by the commonwealth, has no application whatever to this case.

Counsel for the commonwealth admit in their brief filed that mandamus is the proper procedure before this court. An appeal would in the opinion of counsel for the defendant not lie, inasmuch as in the act of May, 1883, "it shall be the duty of any law judge of the court to direct an inquiry by commission or otherwise." We hold that upon proper application by the prison physician supported by voluminous depositions to the fact of insanity, the law was mandatory; that the court should make proper inquiry, and in view of its refusal so to do our only adequate and specific remedy is by a writ of mandamus issuing out of this honorable court.

We respectfully submit that unless we receive this court's favorable action we are remediless.

*W. U. Hensel, W. T. Brown* and *John A. Coyle,* for commonwealth.—This application is certainly without precedent and clearly without any legal grounds on the part of the petitioner.

Application for the appointment of a commission in lunacy was made before the judges of the court of oyer and terminer of Lancaster county, under the Act of May 8, 1883, P. L. 21, entitled, "An act relative to the supervision and control of hospitals or houses in which the insane are placed for treatment or detention," and, after consideration of the petition there presented, Judge LIVINGSTON, in an opinion, dismissed the petition for reasons which were fully stated therein.

The commonwealth respectfully submits that neither in the title of the act, nor in section 29 of said act, upon which the petitioner seems to rely, are there any grounds for an application for a commission in lunacy applicable to a prisoner convicted of murder in the first degree and awaiting sentence of death. The only authority for the removal of insane criminals, under the acts of assembly of Pennsylvania, is that contained in section 1 of the Act of May 14, 1874, P. L. 160, and this act of assembly has received judicial construction and has been considered by this Court in Ex parte John McGinnis, 14 W. N. C. 221, in which Chief Justice MERCUR, after consultation with the justices, said:

"This is a peculiar case. The prisoner was tried, convicted and sentenced. A writ of error brought the case to this Court, where it was fully argued. We considered all the evidence, as well as the law, and affirmed the judgment. We have information of the fact of the commission appointed by the governor to examine the question of the prisoner's sanity, and the action of the members of that commission. The governor, after having given careful consideration to the reports of the commissioners, has declined to interfere with the sentence of the Court.

"We are now of the opinion that it would establish a very bad precedent if we, as a Court of last resort, should, on the eve of the day fixed for execution, interfere with the well considered exercise of discretion by the governor. While it is eminently proper for the prisoner's counsel to exhaust every effort in his behalf, we do not think the circumstances of the case, or the act of assembly cited, warrant such interference on our part, and we are, therefore, constrained to refuse the application."

The act of May 14, 1874, was also considered in the case of

Ex parte Charles E. Briggs, 14 W. N. C. 341, in which Judge PIERCE, sitting in the oyer and terminer of Philadelphia county, delivered an opinion, in which he said:

"A prisoner, convicted of murder and under sentence of death, is remitted, by authority of law, to the control of the executive, either for execution of the sentence, commutation of it, or pardon in the manner prescribed by law. This discretion, which is vested in him, is within his control. He is the sole judge of the circumstances which may influence him to exercise clemency or enforce the execution. The discretion carries within it the right to ascertain for himself the condition which may influence him in the exercise of these powers. The act in question transfers this inquiry to a commission in whose appointment he has no voice and whose decision has no controlling effect on him. He may disregard its finding and satisfy himself, from other sources, what is his duty with respect to the prisoner. This renders the statute futile. In any event, it seems to be an interference with the powers vested by the constitution and laws in the governor, and with the due and orderly administration of the law. The legislature cannot be presumed to have intended this. . . . A direct application to the governor himself would no doubt lead him, as it has done heretofore, to inquire into the mental condition of the prisoner or for any person in the commonwealth under sentence of death." The petition was dismissed.

With these decisions in view, the court below, in this case, very properly dismissed the petition, as the act of 1883 in no way conflicts with the act of May 14, 1874, nor does it repeal the act of 1874, in so far as to make the granting of a commission mandatory upon the court of oyer and terminer.

In the case of Laros v. Commonwealth, 84 Pa. 200, the prisoner's counsel filed a plea in bar of sentence, alleging that, since the commission of the offense for which the defendant was indicted, and since the verdict, the prisoner had become insane, and, at that time, was insane. On motion of the district attorney, this plea was stricken off, for the reasons that the matters therein alleged could not then be heard, as they were without the jurisdiction of the court, and this was assigned as error to the Supreme Court. Chief Justice AGNEW, in delivering the opinion, passing upon these assignments of error, said:

" The last three assignments of error raise a single question upon the power of the court to inquire, by inspection and per testes, into the insanity of the prisoner since verdict. We have no precedents in this state, known to us, how the inquiry shall be conducted, when such a plea in bar of sentence is put in. It seems to us, however, that no right of trial by jury is involved in the question. A jury having found a verdict against the plea of insanity when set up as a defense to conviction, subsequent insanity cannot be set up in disproof of the conviction. The plea, at this stage, is only an appeal to the humanity of the court to postpone the punishment until a recovery takes place, or as a merciful dispensation. The rights of the prisoner, as an offender on trial for an offense, are not involved. He has had the benefit of a jury trial, and it is now the court only which must be satisfied on the score of humanity. If the right of trial by jury exist at all, it must exist at all times, no matter how often the plea is repeated alleging insanity occurring since the last verdict. Such a right is inconsistent with the due administration of justice. There must be a sound discretion to be exercised by the court. If a case of real doubt arise, a just judge will not fail to relieve his own conscience by submitting the fact to a jury."

The commonwealth, therefore, in view of these rulings, which so far as we are able to learn, have never been modified or overruled, respectfully submits that the remedy, or the resort, for the prisoner's counsel, now lies only with the executive of the state.

The prisoner was tried by a most intelligent jury, in which trial the defense of insanity was the only one relied upon. The trial occupied a whole week. Expert testimony, and other testimony not expert, was submitted in his behalf and by the commonwealth. The prisoner was convicted of murder in the first degree. His case was appealed to the Supreme Court and the judgment of the lower court was affirmed. Application was made to the board of pardons. The testimony of physicians who testified at the trial that he was insane, and additional testimony submitted by other physicians who did not testify at the trial, was presented to, and fully considered by, the board of pardons, and, in their judgment, there was not sufficient proof of the prisoner's insanity to cause them to make any recommen-

dation to the governor for a commutation of sentence. The date of the execution being fixed for June 7, this motion cannot be for any other purpose than that of delay and to postpone the carrying out of the death warrant by the sheriff of Lancaster county, and we humbly, but earnestly and sincerely, ask this court to deny the same.

This being an application for a writ of mandamus, the Supreme Court of Pennsylvania, in 165 Pa. 315 (Johnson's License), in considering the object of a writ of mandamus, said: "It is a command to some official, or other officer, to proceed to the discharge of some official duty. When that duty is deliberative, or depends upon the exercise of official discretion, the purpose of the writ is to quicken the action of the officer and require him to proceed to hear, to deliberate, to exercise his discretion. It does not lie to revise the decision of any person clothed with judicial deliberation or discretionary powers:" Deckert v. Commonwealth, 113 Pa. 229; Raudenbusch's Petition, 120 Pa. 328.

"If a judge declines to hear, or delays a hearing unreasonably, a mandamus is the proper remedy. It commands him to proceed to a hearing and decision; but it is not a substitute for an appeal, and it does not bring up for review the soundness of the discretion used, or the correctness of the conclusion reached. . . . . The general rule that courts will not undertake a supervisory control over the exercise of discretionary powers upon a mandamus, was restated and applied during the last year in Commonwealth ex rel. v. Sherry & Jenks, 154 Pa. 368, and it is too well settled to require discussion. In a clear case of an abuse of discretion, a certiorari to bring up the record for review might enable us to reach the difficulty, and possibly it might be reached in some cases on a petition for a writ of mandamus; but the general rule is as stated in the cases cited above."

OPINION BY MR. JUSTICE GREEN, May 31, 1899:
Prayer of petition refused, and petition dismissed.

Mr. Chief Justice STERRETT dissented.